UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:   Sherry Harris Crewe<br><br>          Debtors. | ) Case No.: 13-36761-KRH<br>)<br>) Chapter 13<br>)<br>) |

MOTION TO APPROVE LOAN MODIFICATION

**PLEASE TAKE NOTICE:** The Debtor in this case, has filed with the Court a motion to approve loan modification, the motion being more particularly described below.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant relief sought in the Motion, or if you want the Court to consider your views on the Motion, then you or your attorney must **on or before twenty-one (21) days after service of this Motion**:

- File with the Court, at the address shown below, a written request for a hearing.  If you mail your request to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

United States Bankruptcy Court
Eastern District of Virginia
701 E. Broad St, Room 4000
Richmond, Virginia 23219

*You must also mail a copy to:*

Brett Alexander Zwerdling, Esquire
Zwerdling, Oppleman & Adams
5020 Monument Avenue
Richmond, Virginia  23230

<u>Counsel for Debtor</u>
Brett Alexander Zwerdling, VBN 39569
Zwerdling, Oppleman & Adams
5020 Monument Avenue
Richmond, VA  23230
(804) 355-5719 Fax (804) 355-1597
bzwerdling@zandolaw.com

- Attend the hearing on **June 25, 2014 at 10:30 a.m.** at the United States Bankruptcy Court, 701 E. Broad St., Room 5000, Richmond, VA 23219

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief without a hearing.

MOTION

Comes now your Debtor, by counsel, who states as follows:

1. This action is brought by the Debtor in the above-captioned proceeding to obtain this Court's permission to enter into a loan modification on a loan secured by residential real property as follows:

    a. <u>Street Address</u>:  7001 Summers Trace Terrace, Chesterfield, VA 23832  (County of Chesterfield)

    b. <u>Legal Description</u>:  Parcel # 76768998910000:  Section A, Lot 014, Summer's Trace Subdivision, Dale Magisterial District, Chesterfield County, Virginia

2. This Court has exclusive jurisdiction over the property in question under 28 USC Section 1334. This is a core matter.

3. The Mortgage will be modified to reflect the following terms:

| CURRENT TERMS | | Proposed Modified Terms | |
|---|---|---|---|
| Proof of Claim Balance | $174,734.74 | Modified Balance | $176,905.31 |
| Current Maturity Date | 12/1/2035 | "Interest Bearing" Principal Balance | $176,905.31 |
| Current Interest Rate | 6.375% | Reduction in Old Principal Balance | n/a |
| Current Payment Due Date | 1st of month | Deferred Principal Balance | n/a |

| | | | |
|---|---|---|---|
| Current P & I | $1,187.31 | Modified Mortgage Term | 5/1/2054 |
| Current Payment Amount | $1,463.00 | Modified Interest Rate | 4.62500% |
| | | Post Modification Due Date | 5/1/2014 |
| | | Post Modification P & I | $809.57 |
| | | Estimated Payment w/ Escrows | $1,100.00 |
| | | Contribution Required | 0.00 |

4. The loan modification on the real property would not prejudice the rights of any party, and would allow the debtor to comply with the terms of the confirmed chapter 13 plan.

WHEREFORE, the Debtor prays that this Court enter an Order permitting the loan modification of the real property listed above.

Sherry Harris Crewe

/s/ Brett Alexander Zwerdling<br>Counsel

Certificate of Service

I hereby certify that on June 3, 2014 a true copy of the foregoing was mailed by first class U.S. mail, or electronically served, upon all necessary parties and the following:

| | | |
|---|---|---|
| Office of the U.S. Trustee<br>701 East Broad Street, Suite 4304<br>Richmond, VA 23219 | Robert E. Hyman<br>Chapter 13 Trustee<br>P.O. Box 1780<br>Richmond, VA 23218-1819 | Td Bank Usa/targetcred<br>Po Box 673<br>Minneapolis, MN 55440 |
| Capital 1 Bank<br>Attn: Bankruptcy Dept.<br>Po Box 30285<br>Salt Lake City, UT 84130 | Cato Corporation<br>Attn Bankruptcy/Credit Dept<br>8100 Denmark Rd<br>Charlotte, NC 28273 | Citibank Sd, Na<br>Attn: Centralized Bankruptcy<br>Po Box 20363<br>Kansas City, MO 64195 |

| | | |
|---|---|---|
| CJW Medical Center<br>P.O. Box 13620<br>Richmond, VA 23225-8620 | Cjw Medical Center<br>c/o Capio Partners LLC<br>2222 Texoma Pkwy Ste 150<br>Sherman, TX 75090 | Comcast<br>c/o Eastern Account Sys.<br>Po Box 837<br>Newtown, CT 06470 |
| Credit First/CFNA<br>Bk13 Credit Operations<br>Po Box 818011<br>Cleveland, OH 44181 | Discover Fin Svcs Llc<br>Po Box15316<br>Wilmington, DE 19850 | Green Tree Servicing<br>Po Box 6172<br>Rapid City, SD 57709 |
| Sallie Mae<br>Attn: Claims Department<br>Po Box 9500<br>Wilkes-Barre, PA 18773 | Sears/cbna<br>Po Box 6283<br>Sioux Falls, SD 57117 | |

/s/ Brett  Alexander Zwerdling

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

In re:

_____,

Debtor(s)

Case No. _____
Chapter 13

**Summary of the Proposed Loan Modification**

|  | Original Loan | Modified Loan |
|---|---|---|
| Principal Amount |  |  |
| Interest Rate |  |  |
| Term or Maturity Date |  |  |
| Monthly Payment |  |  |

    2. The modified loan includes future payment changes or balloon payments. The terms of any such future payment changes or balloon payments are:

    3. The modification results in a higher monthly payment. The source(s) of the funds used to make that payment is/are:

    4. The modification results in a lower monthly payment. Choose one of the following:
        a. The amount of future plan payments will be increased.
        b. The amount of future plan payments will not be increased.

```
From: (804) 745-7159         Origin ID: GVEA      FedEx         Ship Date: 14MAY14
Brett Alexander Zwerdling                         Express       ActWgt 0.5 LB
Zwerdling Oppleman & Adams                                      CAD: 5119776/INET3490
5020 Monument Avenue
RICHMOND, VA 23230                      E         Delivery Address Bar Code

SHIP TO: (817) 302-1400       BILL SENDER         Ref #    431050129
Mailstop T214
Green Tree Servicing LLC
7360 S. Kyrene Rd                                 RMA #:
                                                  Return Reason:
TEMPE, AZ 85283
                                                                  RETURNS MON-FRI
                                                  TRK#  7959 3846 1537    STANDARD OVERNIGHT
                                                  0221
                                                                              85283
                                                                              AZ-US
```



1. Select the 'Print' button to print 1 copy of each label.
2. The Return Shipment instructions, which provide your recipient with information on the returns process, will be printed with the label(s).
3. After printing, select your next step by clicking one of the displayed buttons.

Note: To review or print individual labels, select the Label button under each label image above.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283

relationships that work
**green tree**®

04/24/2014

+ 0479381 000007030 09GFF8 - 0926023
BRETT ALEXANDER ZWERDLING
ZWERDLING  OPPLEMAN & ADAMS
5020 MONUMENT AVENUE
RICHMOND VA 23230-3635

relationships that work
# green tree®

April 24, 2014

BRETT ALEXANDER ZWERDLING
ZWERDLING  OPPLEMAN  & ADAMS
5020 MONUMENT AVENUE
RICHMOND VA 23230-3635

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283

Re: Green Tree Servicing LLC ("Green Tree")
    Borrower Name:    SHERRY H. CREWE
    Account Number:    622370807
    Property Address:    7001 SUMMERS TRACE TERRACE
                                 CHESTERFIELD, VA  23832

Dear Brett Alexander Zwerdling:

**Congratulations!** Your client is approved for a permanent modification. This is the first step towards qualifying for a more affordable mortgage payment. Please read this letter in its entirety so that your client understands all of the steps your client needs to take to modify their mortgage payments.

**What you need to do:**
To accept this offer and take advantage of this opportunity, your client must sign and return the enclosed Agreement by 05/24/2014. After the signed Agreement has been received, your client's mortgage will then be permanently modified. If your client does not provide the required signed Agreement by the above-referenced date, this offer will end and your client's account will not be modified.

If you have any questions, please call us toll-free at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST.

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283
Fax: 1-877-612-2422

Green Tree has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error, or Request for Information: PO Box 6176 Rapid City SD 57709-6176.

Sincerely,

Green Tree
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

FNMA Mod Cover Letter- Active BK, 01/10/2014          YAFNMB06 1.3          LTR-1019(ABK)

Investor Loan #    1700497571

**When Recorded Return To:**
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

# LOAN MODIFICATION AGREEMENT

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR LOAN WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, GREEN TREE IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY. Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST**

This Loan Modification Agreement ("Agreement"), made this 24th day April, 2014, between SHERRY H. CREWE ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 07/09/2013 and recorded in Book or Liber 10313, at page(s) 0337, and/or Document# N/A of the REGISTER OF DEEDS Records of CHESTERIFIELD  and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

7001 SUMMERS TRACE TERRACE
CHESTERFIELD, VA 23832

the real property described in the above-referenced Security Instrument.

    In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 05/01/2014, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $176,905.31 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.62500%, from 05/01/2014. Borrower promises to make monthly payments of principal and interest of U.S. $809.57, beginning on the 06/01/2014, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.62500% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. If on 05/01/2054  (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-40 | 4.625% | 05/01/2014 | $809.57 | 06/01/2014 | 480 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT -Single Family-Fannie Mae UNIFORM INSTRUMENT                    Form 3179  1/01(rev. 01/09)

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

<u>Green Tree Servicing LLC</u>                    _____(Seal)
Lender                                            Borrower

                                                  _____
                                                  Date

By:_____                       _____(Seal)
Name: Jeff D Koenig                               Borrower
Title: Director, Default Services
License #: 973833                                 _____
                                                  Date

_____
Date

                        Account#: 622370807


_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

Investor Loan #    1700497571

**When Recorded Return To:**
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

# LOAN MODIFICATION AGREEMENT

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR LOAN WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, GREEN TREE IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY. Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST**

This Loan Modification Agreement ("Agreement"), made this 24th day April, 2014, between SHERRY H. CREWE ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 07/09/2013 and recorded in Book or Liber 10313, at page(s) 0337, and/or Document# N/A of the REGISTER OF DEEDS Records of CHESTERIFIELD   and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

7001 SUMMERS TRACE TERRACE
CHESTERFIELD, VA 23832

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 05/01/2014, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $176,905.31 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.62500%, from 05/01/2014. Borrower promises to make monthly payments of principal and interest of U.S. $809.57, beginning on the 06/01/2014, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.62500% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. If on 05/01/2054 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower's payment schedule for the modified Loan is as follows:

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01(rev. 01/09)

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-40 | 4.625% | 05/01/2014 | $809.57 | 06/01/2014 | 480 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

<u>Green Tree Servicing LLC</u>                                    _____(Seal)
Lender                                                             Borrower

                                                                   _____
                                                                   Date

By:_____                                  _____(Seal)
Name: Jeff D Koenig                                                Borrower
Title: Director, Default Services
License #: 973833                                                  _____
                                                                   Date

_____
Date

                                                    Account#: 622370807


_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____